IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STEVEN BAER,
    Plaintiff,

vs.                                                        Case No. 5:09cv222/SPM/EMT

WALTER McNEIL,
Secretary, Florida Department of Corrections,
    Defendant.
_____/

**O R D E R**

    Now before the court in this civil rights action filed by Plaintiff Steven Baer ("Plaintiff"), a prisoner who proceeds pro se and in forma pauperis, is Plaintiff's response to the court's order to show cause why this action should not be dismissed for his failure to file a second amended complaint as instructed by the court (*see* Docs. 37, 38).

    In his response, Plaintiff submits that he "chose not to amend his complaint again, because to do so as ordered would have eliminated much of the legal basis behind his suit (to remove allegations surrounding Plaintiff's drug test) or name defendants from whom adequate relief cannot be sought (such as Officer Sapp)" (Doc. 38 at 2). As the court explained, however, in its order directing Plaintiff to amend (Doc. 29), the facts as presented in the first amended complaint (Doc. 23) fail to support a viable claim for relief under 42 U.S.C. § 1983.

    The court will not recommend dismissal of the action at this time for Plaintiff's failure to submit an second amended complaint as instructed. Rather, notwithstanding Plaintiff's indication that he wishes to stand on his first amended complaint, the court will give Plaintiff one more opportunity to amend his complaint in an attempt to state a viable claim. For Plaintiff's convenience, the court repeats, below, the instructions given in its prior order in connection with the first amended complaint.

Plaintiff names one Defendant in this action, Florida Department of Corrections ("FDOC") Secretary Walter McNeil (*see* Doc. 23 at 1, 2). Although Plaintiff's amended complaint is lengthy at eighteen (18) pages, the essence of his claim is adequately summarized in the Statement of Claims and Relief Requested sections of the complaint form. Plaintiff asserts in these sections that parts of the FDOC's substance abuse testing procedure, set out in Rule 33-108.101, Fla. Admin. Code, are unconstitutional. According to Plaintiff, certain provisions of this Rule, "as written and implemented, violate[ ] Plaintiff's right to procedural due process under the United States Constitution, Amendment 14" (Doc. 23 at 18). Plaintiff further asserts that in connection with an alleged failure to provide sufficient urine for a drug test he was given "a false disciplinary report in retaliation for a legal claim he made of overcrowding, and suffered great harm. No evidence was available besides Plaintiff's word to contest the fabrication of the officer" (*id.*). Plaintiff seeks as relief, *inter alia*, a preliminary injunction and restraining order "finding Rule 33-108.101, F.A.C. unconstitutional, to the extent that it does not provide two hours in a dry cell [for prisoners unable, for medical or other reasons, to produce a urine sample immediately] and videotaping of the test" (*id*).

With respect to Plaintiff's claim that certain provisions of Rule 33-108.101, Fla. Admin. Code, are unconstitutional, he is informed of the following.[1] "Unlike the strict standards of scrutiny applicable to the constitutional rights of persons in free society, the Supreme Court has adopted a deferential standard for determining whether a prison regulation violates an inmate's constitutional rights," and "[a] prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000). In examining the reasonableness of the regulation at issue, courts use

---

[1] Plaintiff apparently challenges subparagraph (3)(b)7 of Rule 33-108.101, which requires an inmate to provide a minimum of 30 ml of urine for substance abuse testing, and subparagraph 8, which requires an inmate who has not provided an adequate specimen and who indicates a claimed inability to provide an adequate specimen, to be detained in the presence of the tester for up to one hour and to be provided one cup of liquid every 1/2 hour. Subparagraph 8 further provides that an inmate who fails to submit a valid sample within the time allotted is considered to have refused to provide a sample, which shall result in the preparation of a disciplinary report against him. If an inmate claims an inability to urinate, the procedures in Rule 33-108.101(3)(d) apply. This subparagraph provides that an inmate who claims an inability to urine in front of or in the presence of others shall have his urine sample collected in accordance with the conditions outlined in subparagraphs (3)(c)1–6, which permit an inmate to be placed in a dry cell (i.e, one without water) to produce a sample.

the standard announced by the Supreme Court in Turner v. Safley, 482 U.S. 78, 89, 91, 107 S. Ct. 2254, 2261, 2263, 96 L. Ed. 2d 64 (1987), and consider the following factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns. Hakim, 223 F.3d at 1247–48. The Turner Court also instructed that because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," they should "accord deference to the appropriate prison authorities" to manage the prisons. Turner, 482 U.S. at 84–85; *see also* Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003) (ruling that courts owe "substantial deference to the professional judgment of prison administrators").

There appear to be no cases analyzing the facial constitutionality of any of the provisions of Rule 33-108.101, but the court's cursory review suggests that the challenged sections pass constitutional muster. First, it is beyond question that a rational connection exists between a regulation requiring inmates to undergo urine testing for contraband drugs—including with respect to the quantity of urine required and the time/conditions required for producing a sample—and the legitimate governmental interest in maintaining secure prisons. *See* Block v. Rutherford, 468 U.S. 576, 588–89, 104 S. Ct. 3227, 82 L. Ed. 2d 438 (1984) (the unauthorized use of drugs in detention facilities by detainees poses a serious threat to prison officials' ability to maintain institutional security). Second, to the extent Plaintiff asserts that certain procedures outlined in Rule 33-108.101 for obtaining a urine specimen are overly stringent, improperly impinging on an inmate's right to due process because he cannot comply with the quantity or time requirements and thus may face disciplinary action, an alternative means of exercising the right to due process under these circumstances is available, in the form of the appeals process. Plaintiff in fact notes in his amended complaint that his first effort to overturn the disciplinary report which he received for failing to provide a sample of adequate quantity was successful, even though the report was later rewritten (apparently to correct certain deficiencies) and eventually upheld. Also, any infringement on the

due process rights of an inmate claiming an inability to urinate in front of others, or an inmate who has a verified medical condition affecting his ability to produce a urine sample, is accommodated by the provision in the Rule which allows such inmates two hours to produce a urine specimen in a dry cell. *See* Rule 33-108.101(3)(d), Fla. Admin. Code. Third, accommodating the asserted right to due process in the manner Plaintiff suggests—in other words, by permitting *all* inmates (who for whatever reason do not produce the specified quantity of urine when directed to do so) to be placed in a dry cell for urine collection purposes and to require that every single collection procedure be videotaped—would have an adverse impact on the allocation of prison resources. Such requirements would significantly increase the number of personnel and dry cells that would be needed to conduct the tests. Finally, there is no basis for concluding that the challenged provisions of the Rule represent an "exaggerated response" to the valid penological interest in maintaining prison security by monitoring and controlling contraband. *See, generally,* Smith v. Florida Dept. of Corrections, 318 Fed. Appx. 726 (11th Cir. 2008). To the contrary, the provisions of which Plaintiff complains appear to constitute a measured and reasonable means of obtaining urine samples from inmates for purposes of substance abuse testing. Furthermore, as the Supreme Court instructed in Turner, courts should defer to the judgment of prison officials with respect to prison management issues, because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner, 482 U.S. at 84–85. For all of the foregoing reasons, even without the benefit of a response from Defendant McNeil or a more thorough substantive review, this court is persuaded that Plaintiff fails to state a claim for relief when he asserts that certain provisions of Rule 33-108.101 are facially unconstitutional.

Additionally, to the extent Plaintiff seeks to challenge to Rule 33-108.101 as it was applied to him, based on the disciplinary report he was issued for his failure to provide an adequate urine sample, he is informed of the following. The Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); *see also* Wolff v. McDonnell, 418 U.S. 539, 554, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); Heck v. Humphrey, 512 U.S. 477, 481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); Edwards v. Balisok, 520 U.S. 641, 646–48, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997) (prisoner's claim for injunctive relief and

monetary damages for use of wrongful procedures in disciplinary proceedings, which resulted in sentence of placement in isolation for ten days, placement in segregation for twenty days, and deprivation of thirty days of good-time credit, necessarily implied the invalidity of the punishment imposed and therefore could not be pursued unless the prisoner had succeeded in having the revocation penalty invalidated). In this case, Plaintiff states that, among other punishments related to his receipt of the allegedly false disciplinary report, he received sixty-one days in disciplinary confinement and lost 180 days of gaintime. Because Plaintiff asserts that he lost gain time and that the disciplinary report was baseless, he must obtain invalidation of the disciplinary action through habeas corpus or other appropriate state remedy before he may seek relief in this court under § 1983. Plaintiff indicates in his amended complaint that he is in the process of seeking judicial review of his disciplinary conviction; unless and until Plaintiff can demonstrate that the disciplinary report has been overturned, however, he may not assert a § 1983 claim in connection with it. Accordingly, absent an allegation that the disciplinary report has been invalidated, Plaintiff's assertions involving the report should be dropped from the amended complaint.

In amending his complaint, Plaintiff should carefully review the foregoing to determine whether he can present allegations sufficient to state a cause of action under the relevant law. If Plaintiff determines he cannot state an actionable claim, he should file a notice of voluntary dismissal, which will result in a recommendation that this case be dismissed <u>without prejudice</u>. If Plaintiff wishes to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on

his claims.  Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida.

The court addresses Plaintiff's "Amended Motion for Preliminary Injunction and Temporary Restraining Order" (Doc. 34), separately by report and recommendation to the district court.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "**Second Amended Complaint**."  Alternatively, Plaintiff should file a notice of voluntary dismissal within the same time.

3. Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 6th day of May 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**